IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRIAN J. BETTERLEY,

                Plaintiff,                OPINION AND ORDER

v.

                                            11-cv-295-wmc

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

In this action for judicial review pursuant to 42 U.S.C. § 405(g), Brian J. Betterley seeks reversal of a decision by the Commissioner of Social Security finding him not disabled and, therefore, not eligible for Disability Insurance Benefits. Betterley contends that the administrative law judge (1) failed to give sufficient weight to his treating physician's opinion and (2) erroneously relied on the Medical-Vocational Guidelines to find him not disabled. The court finds that the administrative law judge did not commit these errors and will affirm the Commissioner's decision.

FACTS[1]

**A. Background**

Brian J. Betterley was born on January 29, 1962. Betterley has a high school education and past relevant work as a truck driver.

On May 27, 2008, Betterley filed an application for disability insurance benefits, alleging that he had been unable to work since February 15, 2008, because of a neck injury and problems with his back, hips, elbows and hands. (AR 85-86, 103-12.) The

---

[1] The following facts are drawn from the administrative record found at dkt. #5.

local disability agency denied Betterley's application initially and upon reconsideration. Betterley then requested a hearing, which was held on May 10, 2010. Administrative Law Judge Sherwin F. Biesman heard testimony from Betterley. (AR 28-38.) On May 27, 2010, the ALJ issued his decision, finding Betterley not disabled. (AR 16-22.) This decision became the final decision of the Commissioner on February 25, 2011, when the Appeals Council denied Betterley's request for review. (AR 1-5.)

**B. Medical Evidence**

Betterley submits medical evidence concerning three conditions: (1) degenerative joint disease of the bilateral hips; (2) degenerative disc disease of the lumbar spine; and (3) bilateral carpal tunnel syndrome. Betterley's challenge to the Commissioner's decision, however, focuses on the last reason and, more specifically, on Dr. Nicholas Meyer's assessment and treatment of this condition. As such, the court sets forth only the medical evidence concerning that impairment.

Betterley had carpal tunnel release surgery on his left hand in 2000 and on his right hand in 2001. (AR 286.) In March 2008, Dr. Nicholas Meyer performed surgery on Betterley's left elbow to treat an entrapped ulnar nerve and a left carpal tunnel release. Dr. Meyer also referred Betterley to physical therapy, noting that he should refrain from "forceful pronation or wrist/finger flexion due to submuscular transposition." (AR 156.) Betterley attended 15 physical therapy sessions and was discharged on July 10, 2008, after meeting some of his therapy goals, although he reported still having

constant elbow pain. On June 16, 2008, Betterley filled out an activities questionnaire for the state disability agency, indicating he could sit "10+" hours in a day.

On July 15, 2008, Betterley returned to see Dr. Meyer four months after his surgery. Betterley reported that he was doing well and continuing to improve. He had some pain in his arm, but no numbness or tingling on his left and occasional numbness and tingling on the right. On examination, Betterley had full composite finger flexion. Meyer postponed surgery on Betterley's right hand until after planned hip surgery. (AR 262-63.)

Betterley returned to see Dr. Meyer on October 6, 2008. In the treatment notes, Dr. Meyer indicates that Betterley "is doing reasonably well at this time with regard to his left arm although he complains of pain about the medial epicondyle when he pushes his hand across his body. He states that only certain positions cause pain and he feels a burning sensation in his medial elbow." (AR 231.) Betterley also reported some "fairly mild" tingling in his left arm. (*Id.*) Betterley wanted to proceed with surgery on his right arm in the near future, complaining of "numbness, tingling and weakness in the right hand." (*Id.*)

On December 4, 2008, Dr. Meyer performed right carpal tunnel release and right ulnar nerve transposition. On January 12, 2009, Betterley returned to see Meyer and reported that his right arm was recovering better than his left arm had. Betterley also reported left elbow pain. With respect to his left elbow pain, Dr. Meyer noted that the plan was to "continue observation" and "may consider steroid injection in the future but at this time he is going to continue with observation and activities as tolerated." (AR

239.) Betterley again attended physical therapy sessions. He was released from physical therapy after six sessions. The discharge summary noted that his goals were met, and also indicated that his grip strength had improved to 49 pounds on the right and 44 pounds on the left. (AR 242.)

On May 19, 2009, Betterley saw Dr. Meyer and reported he was doing well after receiving an injection in his left elbow. Betterley also reported that he was "pleased with his overall progress, but is still having some difficulties with both arms. He still has some numbness and tingling in the fingers but, again, it seems to be overall improved from preoperative." (AR 322.) On examination, Betterley had "full active and passive range of motion of all digital joints and wrists bilaterally." (*Id.*) Dr. Meyer also noted that there was "no gross instability of any of the digital joints or wrists bilaterally," "no thenar or hypothenar atrophy," and that his "[d]igital flexors, digital extensors, wrist flexors, wrist extensors and interossei are full strength bilaterally." (*Id.*) Dr. Meyer noted some "minimal tenderness" on his left arm. In conclusion, Meyer wrote: "I believe in order to keep his arm as healthy as possible he should continue to follow the restrictions of not more than 20 pounds of lifting and avoid repetition of more than one-third of his work day as permanent restrictions." (AR 323.)

On February 8, 2010, Betterley returned to see Dr Meyer for left elbow pain, primarily with activity. (AR 325.) Meyer discussed options with Betterley, including observation, therapy, injections and surgical intervention. Betterley decided that because his symptoms were "fairly mild," he would obtain a brace and see if that helps during

4

exercise. (AR 326.) Dr. Meyer also showed Betterley some stretching and strengthening exercises.

### C. Consulting Physicians

On October 2, 2008, state agency physician Robert Callear completed a physical residual functional capacity assessment for Betterley listing diagnoses of bilateral hip labral tears, status post right mid-foot fusion, bilateral carpal tunnel syndrome and neck injury. (AR 201.) Callear found that Betterley could lift 10 pounds occasionally and less than 10 pounds frequently, stand or walk two hours in an eight-hour workday and sit six hours in an eight-hour workday, with limited pushing in pulling in the upper extremities and limited handing and fingering. (AR 202, 204.) He listed the various MRIs and x-rays performed and indicated that Betterley's activities of daily living suggested significant walking limitations. (AR 202.) In his assessment, Callear commented on the restrictions imposed on Betterley by Dr. Meyer. He found that Meyer's October 22, 2007, opinion was completed while Betterley was working and that his March 2008 restrictions were post-operative in nature and temporary. Therefore, Callear did not give these opinions any weight in making his residual functional capacity assessment. (AR 207.) On June 23, 2009, state agency physician Pat Chan reviewed the evidence and affirmed Dr. Callear's assessment. (AR 314.)

### D. Hearing Testimony

At the administrative hearing, Betterley testified that he was a long and short haul

5

truck driver for approximately 18 years, but could no longer work, primarily because of hip pain. Because he could not afford health insurance coverage, Betterley also explained that he could not have recommended hip replacement surgery. Betterley further testified that despite carpal tunnel and elbow surgery on both arms, he "still had quite a bit of trouble with his hands and shoulders." (AR 32-33.) Betterley also described having a hard time sitting in one spot for more than a few minutes at a time, as well as some difficulty getting his socks and shoes on. (AR 34, 37.) While Betterley testified to his attempts at walking and housework, he testified that he was in too much pain to work an eight hour day. (AR 37.) Finally, Betterley testified that he is currently receiving income from a disability insurance policy through his former employer. (AR 29.)

### E. Administrative Law Judge's Decision

In reaching his conclusion that Betterley was not disabled, the administrative law judge performed the required five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Betterley had not engaged in substantial gainful activity since February 15, 2008, his alleged onset date.

At step two, he found that Betterley had severe impairments of degenerative joint disease of the bilateral hips; degenerative disc disease of the lumbar spine; bilateral carpal tunnel syndrome, status-post bilateral carpal tunnel release and ulnar transposition; and obesity. He found that Betterley's arthritis of the right foot was a non-severe impairment. (AR 18.)

At step three, the ALJ found that Betterley did not have an impairment that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1. (AR 19.) The ALJ found that Betterley retained the residual functional capacity to perform a full range of sedentary work.  In determining this residual functional capacity, the administrative law judge assessed Betterley's credibility according to 20 C.F.R. 404.1529 and 416.929 and Social Security Rulings 96-4p and 96-7p.  In particular, the ALJ considered Betterley's testimony that (1) he was unable to work because of his hips and (2) did not know if he could perform a sedentary job.  The ALJ found this testimony was not credible based on Betterley's activities, including cleaning, cooking, watching his children, mowing the lawn and an ability to sit for at least ten hours.

The ALJ also found that Betterley's course of treatment for his allegedly disabling carpal tunnel syndrome did not bolster his credibility.  Specifically, the ALJ found that the evidence indicated that Betterley's surgery was successful in relieving his symptoms and shows that other treatment modalities, such as physical therapy and trigger point injections, further alleviated his symptoms.  (AR 20-21.)  Also, the ALJ indicated that Betterley's credibility was adversely affected by his own inconsistent statements provided to treatment sources.  (AR 21.)

In reaching his decision concerning Betterley's residual functional capacity, the ALJ considered the medical evidence.  He found that Betterley had a longstanding history of bilateral hip arthritis and underwent left hip surgery in 2008.  He also considered the recommendation by Dr. Palmer, Betterley's orthopedist, that he have left hip resurfacing arthroplasty.  (AR 19.)  The ALJ found these clinical examinations and

7

assessments inconsistent with Betterley's allegation that he is unable to perform *any* sustained work activity. (AR 20.) The ALJ similarly considered the evidence of Betterley's degenerative disc disease of the lumbar spine, finding that the lack of significant treatment for this condition did not support Betterley's allegations of its severity. (AR 20.)

Finally, the ALJ considered the evidence of Betterley's carpal tunnel syndrome, concluding that Betterley's bilateral carpal tunnel syndrome had significantly improved with surgery and physical therapy and that this impairment did not require any ongoing work related limitations. While giving Betterley the benefit of significant doubt by finding his carpal tunnel syndrome a severe impairment, the ALJ did not find it imposed any ongoing work limitations. (AR 20.)

In determining Betterley's residual functional capacity, the ALJ considered multiple treating and non-examining medical source statements and found them consistent with his finding that Betterley could perform the full range of sedentary work. The ALJ gave some weight to the opinion of Dr. Callear, a state agency physician -- that Betterley could perform sedentary work, but would be limited to only frequent use of his bilateral hands for fine and gross manipulations -- as generally consistent with the medical evidence of the record. Still, he discounted Callear's manipulative ability limitations as the medical evidence also established that Betterley's hand impairments had significantly improved. (AR 21.)

The ALJ also gave considerable weight to the opinion of Dr. Palmer, Betterley's treating physician for his hips, because it was consistent with the record as a whole,

including Betterley's self-report that he could sit for more than ten hours at a time. The ALJ relied in particular on Palmer's opinion that Betterley could perform sedentary work. (AR 21-22.)

At step four, the ALJ found that Betterley was unable to perform his past relevant work as a truck driver, but applied the Medical-Vocational Guidelines to find that Betterley was not disabled at step five. (AR 22.)

## OPINION

### I. Standard of Review

The standard by which a federal court reviews a final decision by the Commissioner is well-settled. The Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

Despite this deferential standard, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision. *Id*. The decision cannot stand if

it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

## II. Treating Physician Opinion

Betterley principally argues that the administrative law judge erred in failing to consider the opinion of his treating hand surgeon, Dr. Nicholas Meyer. The Commissioner has established a regulatory hierarchy for an administrative law judge to evaluate medical opinions, including opinions from state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, opinions from sources who have treated the plaintiff are entitled to more weight than non-treating sources, and opinions from sources who have examined the plaintiff are entitled to more weight than opinions from non-examining sources. 20 C.F.R. §§ 404.1527(d)(1) and (2), 416.927(d)(1) and (2). Other factors the ALJ should weigh are the source's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole, and other explanations regarding the opinion. *Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005); 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6). The ALJ "must explain in the decision" the weight given to the various medical opinions in the record. 20 C.F.R. §§ 404.1527(f)(2)(ii); 416.927(f)(2)(ii).

"[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir.

2006).  When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  *Id.*; 20 C.F.R. § 404.1527(d)(2).  When, however, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  *Id*.  These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors.  20 C.F.R. § 404.1527(d)(2).  In *Scott v. Astrue*, 647 F.3d. 734, 740 (7th Cir. 2011), the court of appeals reaffirmed this standard.

An ALJ must provide "good reasons" for the weight he gives a treating source opinion, *id.*, and must base his decision on substantial evidence and not mere speculation, *White v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999).  An opinion of a non-examining physician is not sufficient by itself to provide evidence necessary to reject a treating physician's opinion.  *Gudgel v. Barnhart*, 345 F. 3d 467, 470 (7th Cir. 2003).

Betterley is correct that the ALJ does not specifically address the May 19, 2009, opinion of Dr. Meyer or state the weight he gave to it.  He did, however, say he considered the multiple treating and non-examining medical source statements and found them to be consistent with his finding that Betterley could perform the full range of sedentary work.  In his decision, he also considered Meyer's treatment notes.

The ALJ's failure to note the weight given to Meyer's opinion specifically is harmless error if the opinion was consistent with the ALJ's finding of Betterley's ability to

perform sedentary work. *McFadden v. Astrue*, 465 Fed. Appx. 557, 560, 2012 WL 618926, at *3 (7th Cir. Feb. 28, 2012) (unpublished) ("[A]ny error by the ALJ here in not addressing Dr. Musaitif's opinion was harmless[, in part, because] the ALJ's RFC findings incorporated limitations on McFadden's postural functions, which the record as a whole supports."); *see also Sanchez v. Barhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006) ("[E]rrors, if harmless, do not require the reviewing court to upset the agency's decision."). Meyer stated Betterley should "continue to follow the restrictions of not more than 20 pounds of lifting and avoid repetition of more than one third of his work day as permanent restrictions." Sedentary work involves lifting no more than 10 pounds at a time. 20 C.F.R.404.1567(a). The *Dictionary of Occupational Titles* explains that a sedentary job does not involve more than occasional exertion of up to 10 pounds and defines occasional as not more than a third of the work day. DOT Appendix C, *Components of the Definition Trailer, § IV (Physical Demands-Strength Rating)*, 1991 WL 688702 (G.P.O. 1991). Thus, Meyer's restrictions did not prevent Betterley from performing sedentary work.

 Betterley argues that Meyer's restrictions can be interpreted to include a non-exertional limitation of manipulative limitations. In other words, Betterley contends that the "avoid repetition of more than one third of his work day" referred to using his hands and fingering and not to lifting. This is not, however, what Meyer wrote or even a reasonable interpretation of his written opinion. If Meyer wanted to restrict the use of Betterley's hands or fingers, it is reasonable to assume that he would have written as much, just as he did when he issued such a restriction immediately after Betterley's

March 2008 surgery. Furthermore, in examination notes on the date of his opinion, Meyer stated Betterley had full active and passive range of motion of all digital joints and wrists bilaterally and improved grip strength in his right hand. There is, therefore, substantial evidence to support the ALJ's statement that he considered multiple treating source statements and concluded that Meyer's opinion was consistent with his finding of Betterley's ability to perform sedentary work. Accordingly, the court finds that the ALJ properly considered Meyer's opinion in arriving at Betterley's residual functional capacity assessment.

### III. Reliance on Medical-Vocational Guidelines

Betterley also argues that the administrative law judge erred in relying on the Medical Vocational Guidelines to find Betterley disabled because he had non exertional impairments. At the last step of the sequential evaluation process, the administrative law judge can satisfy the Commissioner's burden by relying on one of the Medical-Vocational Guidelines found in 20 C.F.R., Subpart P, App. 2. *Caldarulo v. Bowen*, 857 F.2d 410, 413 (7th Cir. 1988). These rules take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy and very heavy), taking into account the other vocational factors of age, education and work experience. 20 C.F.R., Subpart P, App. 2, § 200.00(b).

Because the rules account only for limitations that affect the person's ability to meet the exertional requirements of jobs, they are dispositive only when the person's limitations are exertional in nature (*e.g.*, limitations on sitting, standing, amount of

13

weight lifted). 20 C.F.R., Subpart P, App. 2, § 200.00(e). When a person has additional non-exertional limitations (such as limitations on the ability to balance, manipulate objects, hear, see, perform mental tasks or tolerate environmental conditions such as heat, cold, dust and fumes), the guidelines can be used only as a "framework for consideration" and the administrative law judge must cite other evidence for his conclusion that there are significant numbers of jobs that the claimant can perform. *Id*.

The Commissioner's regulations recognize that in some cases, a person's non-exertional limitation may be so insignificant that it obviously would not diminish the relevant job base and the relevant Medical-Vocational Guideline may still be applied. Soc. Sec. Ruling 83-14. In "more complex" cases, however, the administrative law judge may need the assistance of a vocational expert. *Id*. The Court of Appeals for the Seventh Circuit has said that a vocational expert is not required if there is "reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." *Warmoth v. Bowen*, 798 F.2d 1109, 1112 (7th Cir. 1986).

In this case, Betterley argues that his non-exertional manipulative impairments would diminish the job base and that the administrative law judge should not have used the Medical Vocational Guidelines. However, as discussed above, the administrative law judge rejected Betterley's claim of manipulative impairments and there is credible evidence to support this finding. Indeed, there is no evidence to *support* such a limitation. While Betterley separately argues that his inability to concentrate should have been considered a non-exertional impairment, there is also no evidence in the record to

14

indicate that any problems with concentration would interfere with his ability to perform unskilled sedentary work. Because the administrative law judge did not find Betterley had any non-exertional limitations, he properly used the Medical-Vocational Guidelines to find Betterley not disabled at step five.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Brian J. Betterley's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 27th day of August, 2014.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge